UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-43-GWU

BARBARA ROBINSON,                                            PLAINTIFF,

VS.                           **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff had previously filed <u>Robinson v. Apfel</u>, London Civil Action No. 99-341 (E.D. Ky.) to appeal from the negative administrative decision on her application for Supplemental Security Income (SSI).  After the undersigned's Memorandum Opinion, Order and Judgment of October 6, 2000, the case was returned to the agency for further consideration of the plaintiff's mental and physical impairments.  After several more decisions by administrative law judges (ALJs) and remands by the Appeals Council, an ALJ issued a final decision dated January 13, 2006 finding that the plaintiff was not under a disability (Tr. 293-99) and the case is again before the undersigned.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir.

1

07-43  Robinson

1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under

2

07-43  Robinson

certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is

3

significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The court had remanded the case in October, 2000 specifically for the consideration of the plaintiff's mental impairments, noting that there was an uncontradicted 1995 functional capacity assessment by the plaintiff's treating physician, Dr. Mark Secor, stating that she was "seriously limited but not precluded" in dealing with work stresses and maintaining attention and concentration.  (Tr. 235).  The court also noted that Dr. Secor had indicated on at least one occasion that the plaintiff could use her arms overhead only intermittently and no more than two hours per day, which might have been inconsistent with jobs named by the Vocational Expert (VE).  (Tr. 222).  See Robinson v. Apfel, supra, p. 9.

4

07-43  Robinson

Following the remand, it appears that the defendant attempted to comply with the remand order by obtaining a consultative examination by a psychologist, Dr. Gary Maryman, who examined the plaintiff on September 13, 2001.  (Tr. 498).  Dr. Maryman diagnosed a pain disorder and a depressive disorder and completed a residual functional capacity assessment stating that Mrs. Robinson would have a "poor," defined as "limited but not totally precluded," ability to deal with the public, deal with work stresses, and understand, remember, and carry out complex job instructions.  (Tr. 506-7).

The next ALJ to consider the plaintiff's case stated that he would adopt Dr. Maryman's assessment, which he described as stating that Mrs. Robinson had a poor ability to tolerate work stress [and] to understand, remember, and carry out complex job instructions.  (Tr. 535).  No mention is made of her ability to deal with the public.  Physical factors given by the ALJ were based on 1994 restrictions given by Dr. Secor, which included a restriction to pushing or pulling 30 pounds or less.  (Tr. 222, 535).  According to the ALJ's February 21, 2002 decision, a VE testified that there were jobs that such a person could perform.  (Tr. 536).  However, no copy of the administrative hearing related to this decision is included in the present court transcript.

The Appeals Council remanded the 2002 ALJ decision because it did not contain a sufficient discussion of the plaintiff's medication side effects, her activities of daily living, and the credibility of her subjective complaints.  (Tr. 545).  The

Appeals Council also criticized the hypothetical question for failing to include all of the limitations found by treating sources, as well as for adopting the opinion of Dr. Maryman.  (Tr. 545-6).  The Appeals Council correctly noted that the plaintiff's Date Last Insured (DLI) was December 31, 1999 (Tr. 451); thus, Dr. Maryman's opinion had been given almost two years after the DLI.  The Council then incorrectly stated that there was no evidence of a mental impairment on or before the DLI (Tr. 546), a conclusion completely ignoring the basis of the court's October, 2000 remand.

An ALJ decision in June, 2003 followed the Appeals Council's remand in stating that there was no evidence of a mental health impairment until at least two years after the DLI.  (Tr. 314).  Following yet another Appeals Council remand, the current decision was issued on January 13, 2006, also finding that there were no "severe" mental impairments before the DLI.  (Tr. 295).  The ALJ found that Mrs. Robinson had "severe" impairments consisting of myofascial, cervical, and left shoulder pain and arthritis.  (Id.).  He presented a hypothetical question to a VE which limited the plaintiff to lifting 10 pounds occasionally and less than 10 pounds frequently, with the ability to sit for 90 minutes and walk for 90 minutes with a 10 minute break during that period, and also having the following non-exertional limitations.  (Tr. 722).  She: (1) could occasionally crouch and climb ladders; (2) would have a limited ability to push, pull, and reach overhead; (3) could not work in cold temperatures; and (4) could not work around hazards such as machinery and dangerous heights.  (Id.).  The VE responded that there were jobs, including

reservation/interview/reception/information clerk, and general office clerk, which such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 723).  No alternative hypothetical question giving any mental restrictions was provided.

While the omission of any discussion of the plaintiff's mental impairments in the most recent administrative decisions is somewhat understandable in view of the directions of the Appeals Council in 2002, as well as the fact that the court's October 6, 2000 Memorandum Opinion is not contained in the current transcript and may not even have been available to the current ALJ, the fact remains that the underlying basis of the court's remand over seven years ago was not addressed in the current administrative decision.[1]  The only specific evidence regarding the plaintiff's mental impairments comes from Dr. Secor and Dr. Maryman.  If Dr. Maryman's opinion is not entitled to controlling weight because it was given after the DLI, a conclusion apparently at odds with the current ALJ's determination to give effect to the physical functional capacity assessment provided by Dr. Secor one month later (Tr. 296, 519-21), the defendant still has not properly dealt with the

---

[1]Nor is it apparent that substantial evidence would have supported a finding that the plaintiff was not under a disability based on the 2002 ALJ decision.  Although the ALJ on that occasion purported to adopt the mental restrictions given by Dr. Maryman, the decision mentions only a "poor" ability to tolerate work stresses and understand, remember, and carry out complex job instructions.  (Tr. 535).  Apparently, the ALJ overlooked (Tr. 533) Dr. Maryman's restriction on dealing with the public (Tr. 506-7).  It is impossible to determine if this restriction was given to the VE, since the record of this administrative hearing is not included in the court transcript.

restrictions given by Dr. Secor before the DLI, which, as previously noted, said that the plaintiff had a "seriously limited but not precluded" ability to deal with work stresses and maintain attention and concentration.  (Tr. 235).[2]

Turning to the plaintiff's objections to the physical restrictions contained in the current administrative decision, Mrs. Robinson argues that the ALJ omitted Dr. Secor's indication that her impairments or treatments would cause her to be absent from work more than three times per month.  (Tr. 521-2).  The defendant asserts that the omission is harmless because the physician based this portion of his opinion on the plaintiff's inability to return to her past relevant work as a sewing machine operator, which required repetitive use of the left upper extremity and a fixed position of her cervical spine.  Commissioner's Motion for Summary Judgment, Docket Entry No. 6, p. 8, n. 2.  The wording of the physician's explanation (Tr. 522) supports the Commissioner's interpretation.

Finally, the plaintiff argues that the ALJ's decision did not properly evaluate her subjective complaints of pain under the standards set out in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).  However, a review of the ALJ's decision shows that he adequately considered the

---

[2]The court notes in passing that the physical restrictions given by the ALJ in this instance were less limiting in terms of pushing and pulling than those adopted by the ALJ in 2006.  Even if a review of the transcript of the hearing showed that the ALJ's actual hypothetical question included all of Dr. Maryman's limitations, the discrepancy in the physical findings would leave the court unable to say that substantial evidence supported the present decision.

07-43  Robinson

objective medical evidence in determining whether the underlying medical condition could reasonably be expected to produce disabling pain.  (Tr. 295-6).

The decision will be remanded for further consideration of the plaintiff's mental impairments.

This the 6th day of December, 2007.

Signed By:

**G. Wix Unthank**

**United States Senior Judge**